# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 17, 2011

## JASON PAUL SHERWOOD v. STATE OF TENNESSEE

### Direct Appeal from the Criminal Court for Davidson County
### No. 2004-C-2268    Cheryl Blackburn, Judge

---

### No. M2010-00149-CCA-R3-PC  - Filed June 17, 2011

---

A jury convicted the petitioner, Jason Paul Sherwood, of two counts of premeditated first degree murder, two counts of felony murder, and attempted first degree murder.  The trial court sentenced him to two consecutive life sentences plus twenty-five years.  This court upheld his convictions and sentences.  The petitioner filed a petition for post-conviction relief alleging ineffective assistance of counsel, and the post-conviction court denied relief.  The petitioner appeals the court's denial of post-conviction relief.  Following our review of the record, the parties' briefs, and applicable law, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Nathan Moore, Nashville, Tennessee, for the appellant, Jason Paul Sherwood.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Davidson County jury convicted the petitioner of two counts of premeditated first degree murder, two counts of felony murder, and attempted first degree murder.  The facts underlying the convictions, as summarized by this court's opinion on direct appeal, are as follows:

> [The petitioner] purchased an automobile engine from Shrum's Auto Salvage approximately five weeks prior to the shootings.  Mr. Robertson, one

of the victims, sold [the petitioner] the engine and discounted the engine's purchase price because the engine needed modifications in order for it to operate in [the petitioner]'s Chevrolet Blazer. [The petitioner] told Mr. Shrum he thought the modifications would cost $175.00. [The petitioner] first took the engine to Mr. Henley who told [the petitioner] he would modify the engine for $500.00. [The petitioner] told Mr. Henley that he would talk to Mr. Robertson about returning the engine but later told Mr. Henley that Mr. Robertson would not refund the engine's purchase price. [The petitioner] removed the engine from Mr. Henley's shop three or four weeks later without the modifications. [The petitioner] next asked Mr. Heacock to work on the engine, and Mr. Heacock told [the petitioner] he would charge $400.00 for the job. On the afternoon of the shootings, Mr. Heacock helped [the petitioner] load the engine into the back of [the petitioner]'s van. [The petitioner] told Mr. Heacock that he was going to return the engine to Shrum's Auto Salvage, and that "he had fixed it up" with Mr. Robertson.

At approximately 4:10 p.m., Ms. Edge was talking with Mr. Edge by telephone when she heard gunfire. All three victims were unarmed and were shot in different locations of the salvage facility. Mr. Edge, who was found in the shop's bay area, and Mr. Robertson, who was found in the shop's office area, died from gunshot wounds to the head. Mr. Haywood stepped inside the bay to investigate the noises he had heard. [The petitioner] ran around a tow motor, shot Mr. Haywood once in the shoulder, then pursued Mr. Haywood out of the building and shot him a second time in the back as Mr. Haywood attempted to flee. Tests revealed that the casings found at the crime scene and the bullets recovered during the autopsies of Mr. Edge and Mr. Robertson were fired from the same gun.

*State v. Jason Paul Sherwood*, No. M2005-01883-CCA-R3-CD, 2007 WL 189376, at *15-16 (Tenn. Crim. App., at Nashville, Jan. 26, 2007). This court affirmed the petitioner's convictions and sentences. *See id.* at *1.

The petitioner filed a pro se petition for post-conviction relief on January 11, 2008, alleging that he was denied his right to the effective assistance of counsel, the right to confront his accuser, the right to an impartial and unbiased jury, and his fourth amendment rights. He also claimed that the trial court abused its discretion. The post-conviction court appointed post-conviction counsel, and post-conviction counsel filed an amended petition for post-conviction relief. On July 22, 2009, the court held a hearing on the petition for post-conviction relief.

At the hearing, trial counsel testified that he, along with co-counsel from his office, represented the petitioner during all phases of the trial. Trial counsel said that if he could have done the trial over, he would not play the 911 tape because he thought it was a "tactical error." He stated that he played the 911 tape during the trial to refute a witness's description of the assailant. After trial counsel played the tape during trial, he noticed a juror was crying.

Trial counsel testified that he and co-counsel prepared for the petitioner's trial as much as they could. He reviewed the state's witnesses' prior statements and the 911 tape before trial. According to trial counsel, his conversations with the petitioner were brief. He said that the petitioner "didn't whine about the case. He didn't want to talk about his background very much. He was interested in what [their] strategy was and what [their] tactical decisions were, and that was the extent of it. He was a man of few words." He said that working with the petitioner was easy. Trial counsel and co-counsel each prepared to cross-examine half the state's witnesses.

Trial counsel stated that he filed a motion to suppress the seizure of the contents of a white van and a trailer. The trial court denied the motion to suppress. Trial counsel said that the defense also objected to the admission of a box of bullets based on the chain of custody; however, the trial court allowed the state to admit the bullets into evidence. Trial counsel could not recall whether he filed a motion to suppress the petitioner's statements to the police. Trial counsel recalled that the petitioner mentioned an alibi to the police, but the defense was unable to corroborate the petitioner's alibi.

Trial counsel said that while the jury was deliberating the petitioner escaped his temporary holding cell and burst into the jury room. According to trial counsel, when the petitioner entered the jury room he "yelled something to the . . . effect of I'm not guilty, there are things my lawyer hasn't told you." He said that the jury had reached their verdict and was waiting to return to the courtroom when the petitioner entered the jury room. He further said that the trial judge had a hearing on the matter during which the jurors said that they had already reached a verdict, and the petitioner's actions did not influence them. Trial counsel testified that he should have moved for a mistrial, but he did not because he was unsure of the verdict. He stated that "in [his] experience[, when the State gets a second chance after a hung jury, they typically do a better job. And [he and co-counsel] thought the proof came in as favorably as it could in this case on that day."

On cross-examination, trial counsel testified that ninety-five percent of his time practicing law had been spent doing criminal defense work. He stated that besides the petitioner's case, he had represented other defendants charged with murder both in guilty plea negotiations and trials.

Upon questioning from the court, trial counsel stated that he was still working at the public defender's office when they filed the petitioner's notice of appeal, but he thought that he had left by the time the appellate court rendered its decision. Trial counsel said that he "spoke at length" with the public defender who wrote the petitioner's appellate brief.

Trial counsel told the court that he had read the appellate opinion for the petitioner's case. He agreed that the petitioner won the issue regarding suppressing the search of the trailer, but the appellate court said that it was harmless error. Trial counsel recalled that, regarding the issue with the jury, the appellate court said that "the person who invites error can't get relief on it." He said that they did not raise the issue of playing the 911 tape on appeal because trial counsel made a tactical decision to play it for the jury.

The petitioner testified that he and trial counsel discussed where he was at the time of the crime. The petitioner said that he told trial counsel, just as he told the police, that he was working on his vehicle at the Goodlettsville Auto Zone. The petitioner said that he did not discuss playing the 911 tape at trial with trial counsel and said he was unaware that there was a 911 tape. Trial counsel discussed the purpose of the pretrial hearings with the petitioner, and the petitioner said that he was present during the hearings.

The petitioner testified that he asserted his right to a speedy trial and told his attorneys that he was asserting that right. The petitioner said that he was held for eighteen months while he awaited trial. During this time, the petitioner and trial counsel met "quite a few times." The petitioner said that he was not complaining about a lack of discussions with trial counsel.

The petitioner stated that he was denied the right to confront witness E.J. Bernard, the affiant for the affidavit underlying the search warrant in his case, because he did not testify. The petitioner said that neither trial counsel nor co-counsel objected to the trial court's preventing Mr. Bernard from testifying. He said that this allowed Mr. Bernard "to state whatever fabrications and falsehoods that he wanted to without being cross-examined under the crucible of open court." According to the petitioner, Mr. Bernard wrote the affidavit at the petitioner's residence; thus, the resulting warrant was a "custom made and tailor made search warrant." The petitioner stated that trial counsel should have objected to this. He further stated that he was denied the right to confront the court officer who was inside the jury deliberation room when he entered it. The petitioner recalled that during the hearing, the court officer was on the witness stand and that an attorney asked him whether he had polled the jury. The petitioner stated that the trial judge did not allow the court officer to answer the question. Trial counsel did not object, and the petitioner said that this violated the confrontation clause. The petitioner stated that when the court allowed him to exit the holding cell, he observed the court officer inside the jury room while the jury had questions about premeditation and sentencing. He stated that the court officer's presence in the jury

room was "against at least ten rules of law." The petitioner's counsel did not object to this nor did they raise the issue on appeal.

The petitioner stated that during his trial, trial counsel solicited answers that were incriminating to him. He said that trial counsel asked Sergeant Garcia, a former sergeant in the sheriff's department, for a description of the vehicle. Trial counsel then asked whether the vehicle had a "bubble window." According to the petitioner, these questions solicited information that was detrimental to him.

The petitioner stated that he had an issue with a juror whom trial counsel, the state, and the trial judge questioned extensively because he had extraneous information about the facts of the case. The petitioner said that the juror told the state that if the trial lasted longer than two weeks, it would be a financial burden on him because he was not working. He said that the trial judge and the state told the juror that the trial would not last that long. The petitioner said that the trial counsel should have challenged the juror for cause and replaced him with another potential juror. The petitioner stated that the juror with whom he took issue was intentionally placed on the jury and that having that juror on the jury panel was prejudicial.

The petitioner testified that he took issue with the trial transcript's not containing the transcript of the 911 tape. He stated that he asked trial counsel "why he didn't have transcripts of the 911 recording so anybody on the witness stand could be challenged with those transcripts instead of broadcasting the 911 recording out in open court." He said that trial counsel was ineffective for playing the 911 tape. The petitioner further testified that trial counsel was ineffective for not making any contemporaneous objections during trial besides objecting to the state's asking a question twice. He said that trial counsel made that one "procedural objection" but did not make any objections concerning his substantial rights.

The petitioner stated that during the motions for discovery, the state argued that their interviews and reports were undiscoverable *Jencks*[1] material. He said that this violated the rules of discovery and that the state's withholding of exculpatory evidence violated his constitutional rights. The court asked the petitioner what specific evidence the state withheld, and the petitioner answered that he did not know. When the court asked how he knew the evidence was exculpatory if he did not know what it was, the petitioner answered that "if it was incriminating, the prosecutor would have used it against [him] during the trial." The petitioner testified that the "prosecutor falsely implied that [his] fingerprints were in Tennessee's criminal database." He said that trial counsel argued that the implication was false but did not make a contemporaneous objection. He also said that there was an

---

[1] *See Jencks v. United States,* 353 U.S. 657 (1957) (holding that the government must produce documents relied upon by government witnesses in federal criminal proceedings.)

"irreparable misidentification" of him by an eyewitness who did not come forward until after the petitioner's image was on the news.

On cross-examination, the petitioner testified that he did not testify during his trial because he did not trust the police. He said that the police officers who testified "made so many dishonest statements on the witness stand." According to the petitioner the officers implied that he had confessed and was "equivocating." The petitioner said that he was uncomfortable testifying and that it was intimidating to him because he had never been in that position. He stated that he depended on his trial counsel to argue his innocence. Regarding the exculpatory evidence, the petitioner said one eyewitness's description of the perpetrator was different from how he looked. The petitioner did not know whether the state had witness statements that they did not provide to the defense during discovery.

Trial counsel testified, on rebuttal examination, that he had no reason to believe that the state withheld witness statements, *Jencks* material, or any other discovery material from the defense. He recalled that the state turned over the *Jencks* material at the appropriate time.

Trial counsel testified that the petitioner's trial was in the temporary courthouse in MetroCenter, which was a strip mall. He said that the walls were thin and while walking down the hallway he heard the jurors deliberating and "yelling something about premeditation." Trial counsel said that he told the petitioner what he had overheard so that the petitioner would know that the jury "apparently rejected [their] identity defense]" and might convict him. Trial counsel said that he did not enter the jury room, and he did not know whether the court officer entered the jury room.

After hearing the evidence, the post-conviction court took the matter under advisement. On December 18, 2009, the post-conviction court entered an order denying the petition for post-conviction relief. In its order, the post-conviction court found that the petitioner "failed to meet his burden of establishing by clear and convincing evidence that his trial counsel failed to adequately communicate with him." The court also found that trial counsel made a tactical decision to play the 911 recording based on trial preparation. Regarding the juror with whom the petitioner had an issue, the post-conviction court found that the petitioner's claim regarding the jury pool was not a cognizable post-conviction claim and that there was no basis for the trial court to excuse the juror for cause. Finally, the post-conviction court found that the petitioner had already raised and litigated his claims regarding the validity of the search and the court officer's presence in the jury room on direct appeal. The petitioner appeals the post-conviction court's denial of post-conviction relief.

**Analysis**

On appeal, the petitioner argues that trial counsel was ineffective for (1) soliciting information from Detective Garcia that helped the police officers who testified identify the petitioner's vehicle; (2) failing to strike the potential juror who had outside information about the case and claimed serving on the jury would be a financial burden; (3) failing to make objections regarding the petitioner's substantive rights; (4) playing the 911 recording during the trial; (5) his lack of communication with the petitioner; and (5) failing to move for a mistrial after the petitioner burst into the jury room. The state responds that the petitioner failed to prove that trial counsel's performance was professionally unreasonable or that he suffered prejudice. We agree with the state.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations of fact set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40–30–110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is *de novo* with a presumption that the findings are correct. *See id*. Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457–58 (Tenn. 2001).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Id*. at 697; *see also Goad*, 938 S.W.2d at 370. If either element of ineffective assistance of

counsel has not been established, a court need not address the other element. *Strickland*, 466 U.S. at 697.

The petitioner contends that trial counsel was ineffective for asking Sergeant Garcia to describe the vehicle and asking whether the vehicle had a bubble window. Trial counsel did not testify about this issue during the post-conviction hearing. The petitioner argues that these questions solicited detrimental information. However, he does not present any proof to show how trial counsel was deficient for asking these questions or how Sergeant Garcia's answers prejudiced him. Accordingly, the petitioner is not entitled to relief based on this issue.

Next, the petitioner argues that trial counsel was ineffective for not striking a juror who had background information regarding the case and would face a financial burden by serving on the jury. The post-conviction court found that the defense had not used all of its allowed challenges, and thus, the petitioner waived the claims about the jury. The post-conviction court further found no basis to excuse the juror because the juror felt that he could be impartial and because the juror felt financially comfortable serving on the jury if the trial did not take longer than a couple weeks. The evidence does not preponderate against the post-conviction court's findings. The transcript of the voir dire of the juror in question shows that after trial counsel questioned the juror, he stated that he and co-counsel were satisfied that the facts the juror heard were actually about a different incident. Morever, the juror said that he could be fair, impartial, and give the petitioner the presumption of innocence. The petitioner has shown neither that counsel was deficient for failing to strike the juror nor that he was prejudiced. Accordingly, we conclude that the petitioner is not entitled to relief on this issue.

For his third argument, the petitioner claims that trial counsel failed to make any contemporaneous objections to protect his substantive rights. The petitioner has not cited to any specific evidence to which trial counsel should have objected. We note that trial counsel did object to evidence through pre-trial motions to suppress. The petitioner has not explained with any specificity, either to this court or the lower court, what evidence was prejudicial to his case such that trial counsel should have registered an objection. As such, he has not carried his burden of proving this claim and is not entitled to relief for this issue.

For his next issue, the petitioner asserts that trial counsel was deficient for playing the 911 tape during the trial. The petitioner argues that trial counsel's "decision to play the 911 tape was a mistake, eliciting the emotions of the jury in a way that was detrimental to the [petitioner]'s defense, constituting ineffective assistance of counsel." The post-conviction court found that trial counsel's decision to play the 911 recording was a tactical decision used to show that the description of the perpetrator initially given to the police did not match the petitioner's physical appearance. The evidence does not preponderate against this finding.

Trial counsel testified that if given the opportunity again, he would not play the 911 tape because he thought it was tactical error because of the effect it had on at least one juror. We give deference to trial counsel's tactical choices if they are informed ones based upon adequate preparation. *See Hellard*, 629 S.W.2d at 9. Moreover, we examine trial counsel's performance without "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Accordingly, we conclude that trial counsel was not ineffective for making the tactical decision to play the 911 recording. The petitioner is not entitled to relief.

The petitioner further contends that trial counsel was ineffective based on his lack of communication with the petitioner. The petitioner relies on trial counsel's testimony that his meetings with the petitioner were brief. He argues that "more extensive discussions with [him] were warranted to fully explore and execute any potential defenses he may have had." Regarding the communication between trial counsel and the petitioner, the post-conviction court noted that the petitioner testified that he was not complaining about a lack of discussions with trial counsel. The court addressed the quality of communication and investigation and found that the petitioner failed to meet his burden of proving by clear and convincing evidence that trial counsel did not adequately communicate with him. The post-conviction court accredited trial counsel's testimony that he did not believe the state withheld evidence, that he met with the petitioner multiple times, and that the visits with the petitioner were brief because of the petitioner's reticence. The evidence does not preponderate against the findings of the post-conviction court. We conclude that the petitioner has shown neither that counsel's communication with him was deficient nor that a lack of communication prejudiced him. Thus, he is not entitled to relief on this issue.

Finally, the petitioner argues that trial counsel was deficient for failing to move for a mistrial after the petitioner burst into the jury room. The petitioner relies on trial counsel's testimony that he should have moved for a mistrial after the petitioner burst into the jury room and claims that had trial counsel moved for a mistrial, it would have been "a pivotal motion in light of the events that had occurred and the possible effect it would have had - to ensure that [the petitioner] was undoubtedly given a fair trial." Trial counsel testified that he should have moved for a mistrial but explained that he did not do so because the defense did not know what the jury's verdict would be. He further explained that in his experience, the state typically does a better job after a hung jury and he thought the proof during the trial was as favorable to the petitioner as possible. Trial counsel's decision not to move for a mistrial appears to have been based upon adequate preparation, and we will not use hindsight to examine the wisdom of this strategy. The petitioner has failed to meet his burden of proving by clear and convincing evidence that he received the ineffective assistance of counsel.

**Conclusion**

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
J.C. McLIN, JUDGE